IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| REGIS KISHON GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23-CV-969 |
| | ) | |
| TERRY S. JOHNSON, individually | ) | |
| and in his official capacity as Sheriff of | ) | |
| Alamance County, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiff, Regis Green, brings this civil rights action against Terry Johnson, the Sheriff of Alamance County, and a number of deputy sheriffs, contending that they violated his constitutional rights during and after a County Commissioners' meeting on November 16, 2020. He also asserts various state law claims against the defendants. Defendant Alston filed a motion to dismiss, and the other defendants filed a joint motion to dismiss. Those motions will be granted in part and denied in part.

### I. Overview of Allegations

In brief overview and with no attempt to recite all of the detailed, material facts alleged, the complaint alleges the following:

Mr. Green, a longtime Black activist, participated in a peaceful public protest on October 31, 2020, in Alamance County where he and others were pepper-sprayed by law

enforcement. Doc. 1 at ¶¶ 1–2, 10, 23, 28 30–32. He was arrested for refusing to leave the protest area. *Id.* at ¶ 33. These charges were later dismissed. *Id.* at ¶ 34.

Mr. Green attended a County Commissioners' meeting on November 16, 2020, in hopes of speaking about the use of force by county law enforcement officers during the peaceful protest. *Id.* at ¶¶ 36, 39–40. During the meeting, he and many others had difficulty finding seats in authorized areas because of COVID-19 social distancing rules. *Id.* at ¶¶ 45–46. He was harassed by defendants Parker and Fortner, both deputy sheriffs, while white attendees with similar difficulties were not. *Id.* at ¶¶ 47–48. Mr. Parker also threatened him. *Id.* at ¶¶ 47, 49.

The meeting ended with no opportunity for the public to speak. *Id.* at ¶¶ 52–53. Mr. Green and others voiced their displeasure. *Id.* at ¶¶ 53–54.

It was difficult for attendees to leave because of the crowd, which included many sheriff's deputies. *Id.* at ¶ 57. As Mr. Green approached the exit, Mr. Parker pointed at Mr. Green, laughing and taunting him. *Id.* at ¶¶ 58–59. Mr. Green used colorful but not violent language to tell Mr. Parker to leave him alone, *id.* at ¶ 60, but instead Mr. Parker told other deputy sheriffs to "get him, F-ing get him." *Id.* at ¶ 64.

As Mr. Green peacefully moved out of the meeting room, *id.* at ¶¶ 61–63, other officers physically restrained him, without warning, without any order being given to Mr. Green, and without any notification that he was under arrest. *Id.* at ¶¶ 68–73. He was thrown to the floor, held down, punched repeatedly, and otherwise assaulted by various deputy sheriffs while other deputies, including Mr. Parker, stood by and did not intervene. *Id.* at ¶¶ 74–82. Defendants Ray and England, both deputies, moved Mr. Green to an

2

elevator, *id.* at ¶ 99, where Mr. Ray called him names, used a racial slur, threatened him, and further assaulted him while Mr. England did nothing. *Id.* at ¶¶ 100–06. At no time was Mr. Green a physical threat and he never intentionally disobeyed any order. *See id.* at ¶¶ 103, 107–08; *see also id.* at ¶ 81 (Mr. Green was handcuffed).

Officers placed Mr. Green in a holding cell alone, *id.* at ¶ 115, while white arrestees were held together not in a holding cell. *Id.* at ¶¶ 113, 132. The defendants also arrested four other attendees, all white, on the same or similar charges. *Id.* at ¶¶ 110–13. None were assaulted. *Id.* at ¶ 131. Mr. Green received physical injuries during these assaults and has been treated for depression. *Id.* at ¶¶ 120–25.

Mr. Green was charged with violating N.C. Gen. Stat. § 14-223(a), *id.* at ¶ 142, which makes it a misdemeanor to "willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge an official duty." *Id.* at ¶ 143. He has been convicted of this charge. *Id.* at ¶ 148.

## II. Claims

Mr. Green asserts five claims under 42 U.S.C. § 1983 for violations of his constitutional rights. First, he asserts a violation of his First Amendment rights, contending that the conduct of the various defendants before and after the November 16 meeting was undertaken to suppress and restrict his speech or to retaliate against him for that speech. *Id.* at ¶¶ 156–72. Second, he contends that all the defendants used excessive force against him. *Id.* at ¶¶ 173–85. Third, he asserts that the defendants violated his Fourteenth Amendment Equal Protection rights because the defendants treated him differently from other persons in the same situation, specifically, by harassing him and

3

Case 1:23-cv-00969-CCE-JLW    Document 36    Filed 11/12/24    Page 3 of 19

other Black attendees but not white attendees during and after the hearing and by assaulting him but not white arrestees during and after arrest, selectively targeting him because of his race. *Id.* at ¶¶ 186–96. Fourth, he alleges that the defendants conspired against him to violate all of these constitutional rights. *Id.* at ¶¶ 197–209. Finally, he also contends that his conviction for resisting an officer is unconstitutional under the First Amendment because the state statute is overbroad and because as applied to him it punishes only speech. *Id.* at ¶¶ 210–15.

Mr. Green also brings a number of state claims associated with the assault and physical violence directed towards him during and after arrest. These include claims for assault, *id.* at ¶¶ 216–20; battery, *id.* at ¶¶ 221–26, negligence, *id.* at ¶¶ 227–32; negligent infliction of emotional distress, *id.* at ¶¶ 233–39, and intentional infliction of emotional distress. *Id.* at ¶¶ 240–45.

### III. Discussion

#### A. Claims Based on the October Protest

The defendants note that any claims arising out of how Mr. Green was treated during the October 31, 2020, protest are barred by the statute of limitations. While Mr. Green's complaint does not explicitly assert such a claim, it does allege that he was injured that day, arguably as a result of unlawful conduct by unnamed law enforcement officers. *See, e.g.*, *id.* at ¶¶ 1–2. Mr. Green has not disagreed with the defendants that the statute of limitations would bar any such claims. *See* Doc. 21 at 4 n.2 (Mr. Green's brief noting that the October 31 events are offered for context). Any such claims will be dismissed, to the extent they are asserted.

4

Case 1:23-cv-00969-CCE-JLW    Document 36    Filed 11/12/24    Page 4 of 19

Whether and to what extent evidence about the events of October 31 might be relevant is a question for another day.

### B. First Cause of Action: First Amendment

Mr. Green contends that by harassing, threatening, and arresting him, the defendants restricted his right to speak and assemble and retaliated against him for use of protected speech. *See* Doc. 1 at ¶¶ 156–72. He alleges that Mr. Parker ordered his arrest while he was peacefully exiting the courtroom in retaliation for Mr. Green's protected speech. *Id.* at ¶ 165. He alleges that defendants Sykes, England, Ray, Alston, and other Doe defendants arrested him with unnecessary force during and after the arrest to suppress Mr. Green's speech, and that Mr. Parker approved of and ratified their actions. *Id.* at ¶¶ 166–67. The defendants move to dismiss this claim based on *Heck v. Humphrey* and *Rooker-Feldman*, pointing out that Mr. Green's complaint itself acknowledges that he was convicted of the crime for which he was arrested, which shows probable cause. *See* Doc. 16 at 6–8; Doc. 18 at 6–11.

As the defendants say, the existence of probable cause to arrest generally defeats a § 1983 retaliatory arrest claim. *Nieves v. Bartlett*, 587 U.S. 391, 405 (2019); *Nazario v. Gutierrez*, --- F.4th ---, No. 23-CV-1620, 2024 WL 2787963, at *17 (4th Cir. May 31, 2024); *see also Elkins v. Broome*, 328 F. Supp. 2d 596, 599 (M.D.N.C. 2004) (noting that "Plaintiff's guilty verdict demonstrates that Defendant had probable cause to seek a warrant"). The defendants also contend they are entitled to qualified immunity on the wrongful arrest claim because there was probable cause to arrest, which is essentially the

5

same argument. While this rule may limit the plaintiff's First Amendment claim, it does not preclude it.

Mr. Green's claim is not predicated solely on his arrest. His claim as pled relies on numerous other facts plausibly constituting retaliation, including harassment, threats, and physical force. To this extent, the claim is not a retaliatory arrest claim and is not barred by *Heck* and its progeny. *See* 512 U.S. 477, 484–87 (1994) (stating requirements for bringing a claim of malicious prosecution or unconstitutional conviction). Even as a retaliatory arrest claim, it survives to the extent it is based on allegations that he was treated differently from other similarly situated persons who did not engage in the kinds of protected speech Mr. Parker allegedly did not like and who were not arrested; these allegations potentially bring this claim within an exception to the usual rule that probable cause to arrest defeats a § 1983 First Amendment retaliatory arrest claim. *See Nieves*, 587 U.S. at 407 (holding "that the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been").[1]

---

[1] The plaintiff says that "a First Amendment retaliation claim is not defeated by probable cause to arrest where the retaliation was for prior protected speech," Doc. 22 at 6, citing *Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018). *Lozma*n was a case against a city, not individual officers, and arose on facts not like those here. Moreover, the plaintiff's assertion is inconsistent with the Supreme Court's decision a year later. *Nieves*, 587 U.S. at 404 (holding that absent a showing of no probable cause or objective evidence of different treatment than others similarly situated, a retaliatory arrest claim fails). The plaintiff did not mention the other narrow exception identified in *Nieves*, which does not seem to apply here. *See Nazario*, 2024 WL 2787963, at *17 n.11 (stating that "in circumstances where the 'officers have probable cause to make arrests, but typically exercise their discretion not to do so,' the existence of probable cause will not vitiate a retaliatory arrest claim" and citing *Nieves*).

6

Case 1:23-cv-00969-CCE-JLW   Document 36   Filed 11/12/24   Page 6 of 19

Similarly, as to this claim, Mr. Green is not seeking damages for injury caused by the conviction, and he is not asking the Court to review and reject the state court judgment, so *Rooker-Feldman* does not require dismissal for lack of subject matter jurisdiction. *See Lucas v. Henrico Cnty. Pub. Sch. Bd.*, 767 F. App'x 444, 447 (4th Cir. 2019). While there may well be some overlap in the issues presented in his criminal case and those presented here, it is not yet apparent that this claim is "inextricably intertwined" with an existing state court decision. *See D.C. Ct. of Appeals v. Feldman*, 460 US 462, 486–87 (1983). As the Fourth Circuit has noted, "where the federal complaint presents an independent claim, even one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction." *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 340 (4th Cir. 2022) (cleaned up).

As an additional basis for his motion to dismiss this claim, Mr. Alston contends that the facts as alleged show that he was not present for the events that led to Mr. Parker's decision to arrest Mr. Green and so he cannot be liable for a retaliatory arrest in violation of Mr. Green's First Amendment rights. Doc. 16 at 11–12. That is a fair reading of the complaint; Mr. Green alleges that his protected speech was uttered while he was in the meeting room, Doc. 1 at ¶¶ 58–60, that Mr. Alston was outside the meeting room, *id.* at ¶¶ 64, 66, and that Mr. Parker told Mr. Alston and others to arrest Mr. Green as he stepped out of the meeting room. *Id.* at ¶ 66. There are no facts alleged tending to indicate that Mr. Alston participated in the harassment or threats made while Mr. Green was inside the meeting room.

7

"Generally, an assisting officer is entitled to rely on the probable cause determination of the arresting officer and may receive qualified immunity as long as the reliance is reasonable." *Wong v. Guilford Cnty. Sheriff Dep't*, No. 23-CV-223, 2024 WL 85548, at *12 (M.D.N.C. Jan. 8, 2024) (cleaned up and collecting cases); *accord, e.g.*, *Rose v. Centra Health, Inc.*, No. 17-CV-12, 2017 WL 3392494, at *4 (W.D. Va. Aug. 7, 2017) (collecting cases). Mr. Green does not address this argument or provide any case law to the contrary. The motion to dismiss the retaliatory arrest claim against Mr. Alston will be granted.

### C. Second Cause of Action: Fourth Amendment (Excessive Force)

Mr. Green contends that by subjecting him to excessive force, or standing by while others used obviously excessive force, defendants Sykes, England, Ray, Alston, and other Doe defendants violated his Fourth Amendment rights, Doc. 1 at ¶¶ 175–80, and that by approving and ratifying their conduct, Mr. Parker did the same. *Id.* at ¶ 181. He also contends that Mr. Parker and Mr. Johnson are responsible for the violation because they failed to investigate the deputies for the excessive force or to discipline any officers for it. *Id.* at ¶¶ 181–84.

The defendants contend that Mr. Green's state court conviction means that the excessive force claim cannot proceed. Doc. 18 at 10–11. Neither probable cause to arrest nor a conviction excuse the use of excessive force; it is and has been well-established that during a lawful arrest the use of force must be reasonable and cannot be excessive, viewed objectively. *See Smith v. Ray*, 781 F.3d 95, 100–01, 103 (4th Cir. 2015) (holding no reasonable officer could believe a person's "initial act of pulling her

8

arm away when [the law enforcement officer] grabbed her without warning or explanation justified [the officer's] decision to throw her down, jam his leg into her back, and wrench her arm behind her").[2] The right to arrest usually involves the right to use at least a minimal degree of physical force, such as using handcuffs or taking hold of an arm, but the degree of force allowed by the Fourth Amendment is dependent on the circumstances. *See, e.g., E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 179, 183–84 (4th Cir. 2018) (noting the reasonableness of an officer's actions requires evaluation of all the circumstances and finding that use of handcuffs on compliant 10-year-old during arrest made at school was excessive under the particular circumstances).

Here, Mr. Green has alleged that without giving him any instructions or directions that he could physically meet, some of the defendants threw him to the ground, held him down, repeatedly punched him, pressed his throat to the floor, and violently twisted his arms, Doc. 1 at ¶¶ 73–80, all while other defendants stood by and did not intervene. *Id.* at ¶ 82. He alleges no facts tending to indicate that he was not compliant during the arrest, other than acknowledging he could not comply with Mr. Ray's instruction to "put his arms behind his back . . . because his arms were pinned beneath him." *Id.* at ¶ 78. He also alleges that thereafter, while he was handcuffed, Mr. Ray slammed him into an elevator wall, *id.* at ¶ 103, while Mr. England stood by and did not intervene. *Id.* at ¶ 106. Then the defendants denied and ridiculed his requests for medical treatment. *Id.*

---

[2] *See also, e.g.*, *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Elliott v Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996); *Bottom v. City of Salisbury*, No. 21-CV-322, 2023 WL 5207983, at *11–13 (M.D.N.C. Aug. 14, 2023).

9

at ¶ 109.  Some or all of this conduct, if true, could plausibly constitute a constitutional violation for excessive force prohibited by the Fourth Amendment.  Nothing about such a finding would undermine his conviction for a crime that occurred before Mr. Green was arrested and was the purported impetus for his arrest.

Mr. Alston contends he is entitled to qualified immunity because the facts alleged show that Mr. Green was resisting arrest.  That view of the allegations does not take the facts in the light most favorable to the plaintiff, which is the standard at the motion to dismiss stage.  *See Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).  Mr. Green alleges he was compliant the entire time, and he alleges that the physical assaults by Mr. Alston and those in Mr. Alston's presence continued over time.  Every reasonable officer knew in 2020 that it was not constitutional to use excessive force when arresting someone who was not resisting and who was compliant.  *See, e.g.*, *Yates v. Terry*, 817 F.3d 877, 885–86 (4th Cir. 2016); *Jones v. Buchanan*, 325 F.3d 520, 534 (4th Cir. 2003).  Whether it was possible or impossible for Mr. Green to comply raises a factual issue better addressed on a more developed record.  *See generally Nazario*, 2024 WL 2787963, at *13, *15 (noting that when conflicting orders are given and it is impossible to comply with both, a person is not necessarily refusing to comply).

### D.  Third Cause of Action:  Fourteenth Amendment Equal Protection

Mr. Green alleges that Mr. Parker harassed him and threatened him during the County Commissioners' meeting and ordered his arrest based on his race.  Doc. 1 at ¶¶ 186–90, 195.  He alleges that defendants Sykes, England, Ray, Alston, and other Doe defendants used unnecessary force during the arrest, assaulting him but not white

10

Case 1:23-cv-00969-CCE-JLW    Document 36    Filed 11/12/24    Page 10 of 19

attendees who were also arrested. *Id.* at ¶¶ 192–93. The defendants contend this claim should be dismissed based on *Heck* and *Rooker-Feldman*. This motion will be denied for the same reasons discussed *supra* as to the First Amendment claim. *See also Lucas*, 767 F. App'x at 447.

Mr. Alston also contends that the complaint "does not allege any specific conduct" by Mr. Alston that "was motivated by a discriminatory intent." Doc. 16 at 17. He again does not view the allegations in the light most favorable to the plaintiff. While the allegations are thin as to Mr. Alston, viewed as a whole, they raise a plausible equal protection claim against him. Whether Mr. Green can flesh this claim out with the additional facts needed to prove it is a question for another day.

### E. Fourth Cause of Action: Conspiracy to Deprive of Civil Rights

Mr. Green contends that the defendants conspired with each other to violate Mr. Green's First Amendment rights in the ways set forth in the first and third causes of action with the intent to suppress and restrict his speech and that this conspiracy further violated his constitutional rights under the First Amendment. Doc. 1 at ¶¶ 197–209. All the defendants move to dismiss this claim on various grounds.

This claim will be dismissed because an entity cannot conspire with itself. *See Buschi v. Kirven*, 775 F.2d 1240, 1251–52 (4th Cir. 1985). This precept applies in civil rights cases. *Id.* at 1252–53. All the defendants are alleged to be county actors: the county itself, the sheriff, and the deputy sheriffs. Doc. 1 at ¶¶ 11–18. All the individuals are alleged to have acted within the scope of their employment with the county. *Id.* at ¶¶ 11–16 (named individual defendants); *id.* at ¶ 18 (Doe defendants). Mr. Green has not

11

addressed the defendants' arguments or pointed to any reason why this rule should not apply to his case. The Court is not obligated to conduct legal research to determine if there might be a way around the defendants' arguments.

### F. Fifth Cause of Action: First Amendment

Mr. Green alleges that he was arrested for, charged with, and convicted of violating N.C. Gen. Stat. § 14-223(a), which makes it a Class 2 misdemeanor to willfully and unlawfully resist, delay, or obstruct a public officer in discharging or attempting to discharge an official duty. *Id.* at ¶¶ 142–43, 148. He contends that this statute is facially unconstitutional and unconstitutional as applied to him, and that his conviction is unconstitutional. *Id.* at ¶¶ 211–12, 215.

This claim will be dismissed because "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486. To recover for an allegedly unconstitutional conviction, a § 1983 plaintiff must plausibly allege that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 486–87; *see also, e.g.*, *Sheridan v. Shekita*, No. 16-CV-3085, 2016 WL 9083355, at *2 (E.D.N.C. Oct. 31, 2016) (quoting *Heck*, 512 U.S. at 487 (1994)), *aff'd*, 678 F. App'x 145 (4th Cir. 2017). In the absence of this invalidation, the claim "is not cognizable under § 1983." *Heck*, 512 U.S. at 487.

Here, Mr. Green explicitly alleges that he has been convicted of the crime, Doc. 1 at ¶ 148, and nowhere does he allege that the conviction has been invalidated. He

contends that his conviction is unconstitutional because the statute of conviction is unconstitutional on its face and as applied to him. *Id.* at ¶ 212. He makes no strong argument explaining why this cause of action can proceed in the face of clear case law to the contrary. The Court need not reach the defendants' other arguments in support of dismissal of this claim.

### G. Official Capacity Claims

Mr. Green sues all the defendants in their individual and official capacities. Official capacity suits are a way of "pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). More than an agency relationship is required, as there is no *respondeat superior* liability for § 1983 violations. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). For the official capacity claims to proceed, there must be plausible allegations of a government's policy or custom. *Id.* at 694.

The defendants move to dismiss the official capacity claims, contending that as to the § 1983 claims, the allegations of a policy or custom are insufficient. Doc. 18 at 20–23. The plaintiff does not contend otherwise as to anyone other than Mr. Parker and Mr. Johnson. Doc. 21 at 12–13. As to Mr. Parker and Mr. Johnson, the plaintiff contends that those officers are officials for *Monell* purposes because their acts may fairly be said to represent official policy, and he relies on his allegations that their ratification of the acts of the other defendants subjects the defendants to official capacity liability. *Id.*

The official capacity claims will be dismissed. Among other reasons, there are no facts plausibly suggesting a policy or custom, the allegations of ratification are so

13

conclusory as to not be plausible against Mr. Johnson, and the plaintiff points to no case in which a deputy sheriff has been held to be a policymaker with final decision-making authority as required for official capacity liability. *See generally City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–26 (1988) (discussing guiding principles for deciding whether agent is policymaker or implemented an unconstitutional municipal policy). North Carolina law suggests that in the sheriff's office, only the sheriff fills that role. *See generally, e.g.*, *S. Ry. Co. v. Mecklenburg County,* 231 N.C. 148, 151, 56 S.E.2d 438, 440 (1949) (holding in another context that the "sheriff is the chief law enforcement officer of the county"); *Boyd v. Robeson County*, 169 N.C. App. 460, 477, 621 S.E.2d 1, 11 (2005) (noting, as part of deciding that a North Carolina sheriff is a person who can be sued under § 1983, that "the control of the employees hired by the sheriff is vested exclusively in the sheriff"); *Wilcoxson v. Buncombe County*, 129 F. Supp. 3d 308, 317 (W.D.N.C. 2014).

### H. Sixth and Seventh Causes of Action: Assault and Battery

Mr. Green alleges that by blocking his path, descending upon him without warning or provocation, and arresting him, defendants Sykes, England, Ray, Alston, and other Doe defendants placed him in fear of imminent harmful contact and thus assaulted him. Doc. 1 at ¶ 217. He further alleges that Mr. England and Mr. Ray assaulted him in the elevator, *id.* at ¶ 218, and that Mr. Johnson, Mr. Parker, and Alamance County are responsible and liable for the assault by ordering it, authorizing it, or acquiescing in the actions of and by employing defendants Sykes, England, Ray Alston, and Doe defendants. *Id.* at ¶ 220.

14

Mr. Green alleges that by slamming him to the ground and otherwise physically attacking him without justification during the arrest, defendants Sykes, England, Ray, Alston, and other Doe defendants caused harmful contact and thus committed a battery. *Id.* at ¶ 222. He further alleges that Mr. England and Mr. Ray battered him in the elevator, *id.* at ¶ 223, and that Mr. Johnson, Mr. Parker, and Alamance County are responsible and liable for the battery by ordering it, authorizing it, or acquiescing in the actions of and by employing defendants Sykes, England, Ray Alston, and Doe defendants. *Id.* at ¶ 225.

As noted *supra*, law enforcement officers are entitled to use a reasonable amount of force to arrest a person, but they cannot use excessive force. The plaintiff plausibly alleges that the force threatened and used by the various defendants was excessive, to a degree that malice can be inferred.[3] Resolution of qualified immunity at this early stage is not appropriate, viewing the allegations in the light most favorable to Mr. Green. These claims may proceed.

## I. Eighth Cause of Action: Negligence

Mr. Green contends that by arresting him, slamming him to the ground, and otherwise physically attacking him without justification during the arrest, defendants

---

[3] The defendants make a conclusory argument in a footnote about waiver of governmental immunity, Doc. 18 at 11 n.7, but that is not sufficient to raise a question worthy of the Court's consideration. *See Lab'y Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447 (M.D.N.C. 2015) (stating defendant's conclusory argument with nothing more would not suffice); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1320 n.3 (Fed. Cir. 2005) (refusing to address an undeveloped argument raised in a footnote). The fact that the defendants made a more substantial argument in their reply brief, Doc. 23 at 13, does not lead to a contrary result, as the plaintiff has had no opportunity to respond to those arguments. The defendants can raise this at summary judgment if they want.

Sykes, England, Ray, Alston, and other Doe defendants were negligent. *Id.* at ¶ 228. He further contends that Mr. Johnson, Mr. Parker, and Alamance County are responsible and liable for the negligence by ordering it, authorizing it, or acquiescing in the actions of and by employing defendants Sykes, England, Ray Alston, and Doe defendants. *Id.* at ¶ 230.

Governmental immunity shields public officials like county law enforcement officers[4] from liability for mere negligence in performing governmental duties. *See Chastain v. Arndt*, 253 N.C. App. 8, 16, 800 S.E.2d 68, 75 (2017) (noting that a "public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto"); *accord Shuping v. Barber*, 89 N.C. App. 242, 248, 365 S.E.2d 712, 716 (1988); *Talley v. City of Charlotte*, No. 14-CV-683, 2016 WL 8679235, at *12 (W.D.N.C. July 12, 2016). The negligence claims will be dismissed.

### J. Tenth[5] Cause of Action: Negligent Infliction of Emotional Distress

Mr. Green contends that by arresting him, slamming him to the ground, and otherwise physically attacking him without justification during the arrest, defendants Sykes, England, Ray, Alston, and other Doe defendants negligently inflicted emotional distress. Doc. 1 at ¶¶ 234, 236. He further contends that Mr. Johnson, Mr. Parker, and Alamance County are responsible and liable for the negligent infliction by ordering it,

---

[4] It is well settled that police officers are public officials. *Chastain v. Arndt*, 253 N.C. App. 8, 16, 800 S.E.2d 68, 75 (2017).

[5] The complaint skips from an eighth to a tenth cause of action. *See* Doc. 1 at 32–33. It appears that a ninth cause of action was omitted as a clerical error.

16

authorizing it, or acquiescing in the actions of and by employing defendants Sykes, England, Ray Alston, and Doe defendants. *Id.* at ¶ 237.

As this claim is based in negligence, it will be dismissed for the same reasons Mr. Green's eighth cause of action is dismissed: public official immunity.

### K. Eleventh Cause of Action: Intentional Infliction of Emotional Distress

Mr. Green contends that by arresting him, slamming him to the ground, and otherwise physically attacking him without justification during the arrest, defendants Sykes, England, Ray, Alston, and other Doe defendants intentionally inflicted emotional distress. *Id.* at ¶¶ 241–42. He further contends that Mr. Johnson, Mr. Parker, and Alamance County are responsible and liable for the intentional infliction by ordering it, authorizing it, or acquiescing in the actions of and by employing defendants Sykes, England, Ray Alston, and Doe defendants. *Id.* at ¶ 243. He has stated a plausible claim for intentional infliction of emotional distress, and this claim may proceed.

It is **ORDERED** that:

1. The motion to dismiss by defendant Earl Alston, Doc. 15, is **GRANTED** as to the plaintiff's first cause of action to the extent it alleges a retaliatory arrest by Mr. Alston, the plaintiff's fourth, fifth, eighth, and tenth causes of action, and the official capacity § 1983 claims against Mr. Alston. The motion is otherwise **DENIED**.

2. The motion to dismiss by the defendants Terry S. Johnson, Cliff Parker, David Sykes, Joseph England, Taylor Z. Ray, and Alamance County, Doc.

17

17, is **GRANTED** as to the plaintiff's fourth, fifth, eighth, and tenth causes of action, and the official capacity § 1983 claims against the defendants. It is otherwise **DENIED**.

3. Stated another way, **ONLY** the following claims **MAY PROCEED**:

    a. The First Amendment retaliation claim, Doc. 1 at ¶¶ 156–72, against all defendants, except defendant Alston, in their individual capacities;

    b. The Fourth Amendment excessive force claim against all defendants in their individual capacities, Doc. 1 at ¶¶ 173–85;

    c. The Fourteenth Amendment Equal Protection claim against all defendants in their individual capacities, Doc. 1 at ¶¶ 186–96; and

    d. The state law claims for assault, Doc. 1 at ¶¶ 216–20; battery, Doc. 1 at ¶¶ 221–26; and intentional infliction of emotional distress. Doc.1 at ¶¶ 240–45.

4. The following claims are **DISMISSED**:

    a. All § 1983 claims against all the defendants in their official capacities;

    b. To the extent they are asserted, any claims for violation of the plaintiff's constitutional rights on October 31, 2020;

    c. The First Amendment retaliation claim against defendant Alston, Doc. 1 at ¶¶ 156–72;

a. The claim that the defendants conspired against him to violate all of these constitutional rights, Doc. 1 at ¶¶ 197–209;

b. The claim that the plaintiff's conviction for resisting an officer is unconstitutional, Doc. 1 at ¶¶ 210–15; and

c. The state law claims for negligence, Doc. 1 at ¶¶ 227–32, and negligent infliction of emotional distress. Doc. 1 at ¶¶ 233–39.

This the 12th day of November, 2024.

_____
UNITED STATES DISTRICT JUDGE